# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

LISA LEE SHILOH,

    Plaintiff,

  v.

JOHN DOES, et al.,

    Defendants.

CIVIL ACTION NO. 4:12-CV-01086

(MEHALCHICK, M.J.)

## MEMORANDUM

  Plaintiff Lisa Lee Shiloh filed the instant civil rights action on June 8, 2012. (Doc. 1). Proceeding through five years of pre-trial motions, discovery, and amendments, the matter culminated with a bench trial on August 15, 2017. (Doc. 195). The sole claim remaining at trial was Shiloh's claim for excessive force against Defendants Hassinger and O'Shea. Following presentation of the Plaintiff's case, the Defendants moved for judgment as a matter of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, which was granted. Contained within this Memorandum are the Court's findings of fact and conclusions of law warranting the entry of judgment in favor of Defendants Hassinger and O'Shea.

### I. PROCEDURAL HISTORY

  Given the duration of this action, much of the procedural history is omitted and the Court focuses primarily on the case progression as it relates to the issues at trial.

  On June 8, 2012, Shiloh filed her complaint alleging violations of her Fourth, Eighth and Fourteenth Amendment rights as a result of a search of her home by authorities involving forcible entry and chemical agents. (Doc. 1). Shiloh alleged that the use of tear gas was not identified on the warrant and caused medical distress that went ignored by the Defendants.

(Doc. 1). Further, she stated that the Defendants handcuffed her while she was not clothed, until two male Defendants dressed her, constituting cruel and unusual punishment. (Doc. 1). Lastly, she stated that the forcible entry performed six days after the signing of a search warrant violated her due process rights. (Doc. 1). Defendants Hassinger and O'Shea were identified in the initial complaint, although their specific participation was not detailed.

These Defendants were initially dismissed on May 14, 2013. (Doc. 36). Shiloh filed an amended complaint on August 9, 2013. (Doc. 49). Therein, she reaffirmed that the Defendants participated in the deployment of tear gas and forcible entry into her home without announcing their presence. The Defendants filed an answer to the operative complaint on August 8, 2014, denying all allegations. (Doc. 78). The Defendants moved for summary judgment on November 5, 2014, arguing they should be dismissed because they were not present at the time of the entry. (Doc. 94; Doc. 97). The Court recommended dismissal of all Defendants contained in the motion except Hassinger and O'Shea, finding disputes of fact remained on their presence at the time of entry and participation in planning of the search. (Doc. 130). The Report and Recommendation was adopted on September 17, 2015. (Doc. 135).

The parties consented to proceed before the undersigned on June 1, 2017, and four days later the Court set trial for August 15, 2017. (Doc. 183). On July 17, 2017, Shiloh moved for leave to include a Fourth Amendment failure to intervene claim against Hassinger and O'Shea. (Doc. 186). Citing evidentiary and timing concerns, the Court denied Shiloh's motion on August 9, 2017. (Doc. 192).

The case then proceeded to trial. The first witness to testify was Lieutenant Gary Carter, tactical leader for the Special Emergency Response Team on the day of the search.[1] Carter testified that the Defendants requested the service of the SERT team for the search of Shiloh's residence. (Doc. 197, at 10). The Defendants informed the SERT team on the house layout, expected occupants (Shiloh and her husband, along with a dog), the background of the occupants including law enforcement training, the presence of motion sensing lights at the home, and expected presence of drugs and firearms. (Doc. 197, at 11). As a result of these beliefs, SERT approved the Defendants' request for SERT assistance in execution of the search warrant. (Doc. 197, at 11).

SERT members then developed the plan for execution of the warrant. (Doc. 197, at 14). The plan developed involved concurrent entry and deployment of agents through the window of the bathroom adjacent to Shiloh's bedroom, due to concerns about access to firearms in the bathroom, to be performed between 4 and 4:30 a.m. (Doc. 197, at 15).

Carter then testified that the plan was executed as planned on June 15, 2010. (Doc. 197, at 17). He testified that on the date of the execution of the search and arrest warrants, the SERT team arrived at the Plaintiff's home between 4:00 and 4:30am. (Doc. 197, at 15.) The "knock and announce" was initiated and two rounds of tear gas were deployed into the master bathroom of the residence where investigators believed the guns were kept. (Doc. 197, at 17). Both the Plaintiff and her husband were found in the master bedroom, secured without incident, and taken into custody. (Doc. 197, at 17). Approximately two minutes elapsed from

---

[1] Carter, called by the Defendants, testified first with the consent of Shiloh.

- 3 -

the time of the "knock and announce" until the securing of Plaintiff and her husband. (Doc. 197, at 19). SERT members then opened the windows in the home to help ventilate the gas. (Doc. 197, at 19). Carter testified that neither Hassinger nor O'Shea were not at the house when the gas was deployed, nor entered the house with the SERT team. (Doc. 197, at 17-18.). Carter stated that Hassinger and O'Shea waited at a restaurant along Route 97 for safety purposes, as is standard practice. (Doc. 197, at 20). Lastly, Carter testified that the Defendants did not participate in the development of the SERT plan and did not arrive until after Shiloh had been secured. (Doc. 197, at 21).

Next, Shiloh herself took the stand. During her testimony, Shiloh stated that Hassinger and O'Shea did not commit the specific acts of force, but permitted it to happen and provided false information leading to execution of the warrant. (Doc. 197, at 37-38). In support, Shiloh testified that Hassinger and O'Shea clocked in around 3 a.m. and she remembers seeing them in her bedroom before the gas had cleared. (Doc. 197).

Upon conclusion of Shiloh's testimony, the Defendants moved for judgment as a matter of law. (Doc. 197, at 58). Counsel argued that Shiloh's testimony demonstrated that Hassinger and O'Shea did not deploy the gas, knock down the door, or participate in the tactical entry in any way. (Doc. 197, at 58). Further, citing the testimony of Lieutenant Carter, counsel averred that the Defendants did not participate in the creation of the plan. (Doc. 197, at 58). Counsel argued the information provided to SERT demonstrated a need for use of force tactics that was not excessive under the circumstances. (Doc. 197, at 59). Counsel stated that evidence of being on the clock was insufficient to find that either Hassinger or O'Shea used excessive force against Shiloh. (Doc. 197, at 60). Shiloh responded that her claim was predicated upon the Defendants responsibility for the planning of the search and that they failed to step in to stop it. (Doc. 197,

at 60). The Court then granted the Defendants' motion and entered judgment. (Doc. 197, at 61).

## II. FINDINGS OF FACT

Based upon the evidence at trial, the Court makes the following findings of facts:

1. Before dawn on June 15, 2010, a special tactical team (SERT) entered the home of Plaintiff Lisa Lee Shiloh to conduct a search of the residence, pursuant to a warrant authorized in the days prior to execution.

2. Defendants Hassinger and O'Shea requested both the warrant and tactical assistance in the execution thereof following an investigation leading the Defendants to believe that Shiloh and her husband were engaged in the sale of drugs.

3. Hassinger and O'Shea provided the SERT with information on the expected occupants of the residence, its layout, and expected contents inside including drugs and firearms.

4. The information provided reflected a belief that Shiloh and her husband kept weapons in the bathroom adjacent to their bedroom on the second floor of the residence.

5. Further, the residence had motion sensing lights surrounding the exterior.

6. Per the plan developed by SERT, the front door to Shiloh's residence was breached simultaneously with the deployment of tear gas into the bathroom adjacent to Shiloh's bedroom in order to prevent access to the weapons believed to be kept in the bathroom.

7. The team swept the house, which was occupied at the time by Shiloh, her husband, and their granddaughter.

8. SERT members secured Shiloh, who had been asleep.

9. Neither Hassinger nor O'Shea participated in planning the tactical execution of the search warrant, including the use of chemical agents, forcible entry, or securing Shiloh.

10. Further, neither Hassinger nor O'Shea was present at Shiloh's residence during the execution of the warrant, as safety protocols dictated that they wait in a separate location for the all-clear from the SERT team.

11. Neither Hassinger nor O'Shea was present until Shiloh had been secured by the SERT team.

### III. CONCLUSIONS OF LAW

1. After a party has been fully heard on an issue, Rule 52(c) provides that failure to establish the necessary elements of the controlling law may result in judgment against the party bringing the claim, under the discretion of the trial court. FED. R. CIV. P. 52(c).

2. The rule also requires partial findings of the court to be supported by findings of fact and conclusions of law as required by Rule 52(a). FED. R. CIV. P. 52(a).

3. The plaintiff bears the burden of proof on the elements of a § 1983 claim by a preponderance of the evidence. *See, e.g., Groman v. Twp. of Manalapan,* 47 F.3d 628, 638 (3d Cir. 1995).

4. The present civil rights claim is for use of excessive force, brought under 42 U.S.C. § 1983. In a civil rights action, the defendant "must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal

involvement can be shown through allegations of personal direction or of actual knowledge of acquiescence." *Rode*, 845 F.2d at 1207.

5. In short, Shiloh conceded a lack of personal involvement by Hassinger and O'Shea that would constitute excessive force at trial.

6. She noted that the Defendants did not have an active role in the execution of the warrant. Her arguments related to a failure of Hassinger and O'Shea to put a stop to the chain of events leading to the execution of the warrant.

7. Absent personal involvement, the Defendants cannot be held liable for excessive force.

8. Further, even were the Court to have permitted Shiloh's claim of failure to intervene to proceed, Defendants Hassinger and O'Shea cannot be found to have committed a constitutional violation.

9. Where "a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under § 1983." *Smith v. Mensinger,* 293 F.3d 641, 650–51 (3d Cir. 2002) (quoting *Byrd v. Clark,* 783 F.2d 1002, 1007 (11th Cir. 1986)).

10. More specifically, if a police officer is present when another officer violates a citizen's constitutional rights, the first officer is liable under § 1983 if that officer had reason to know that a constitutional violation, such as excessive force, was being used, and that officer had "a reasonable and realistic opportunity to intervene." *Smith,* 293 F.3d at 651.

11. Such an opportunity may exist when excessive force is used "in [the officer's] presence or otherwise within his knowledge" and extends to officers in a non-supervisory role. *Garbacik v. Janson*, 111 F.App'x 91, 94 (3d Cir. 2004) (not precedential) (quoting *Byrd v. Brishke,* 466 F.2d 6, 11 (7th Cir. 1972)).

12. Under any scenario, "[a] failure to intervene claim requires the existence of a constitutional violation." *Ward v. Noonan*, 147 F.Supp.3d 262, 290 (M.D. Pa. 2015) (quoting *Bryant v. City of Phila.*, 890 F.Supp.2d 591, 601 (E.D. Pa. 2012)).

13. Because the Court found that no constitutional violation occurred, there accordingly can be no claim for a failure to intervene against Defendants Hassinger and O'Shea.

14. As Shiloh conceded that the Defendants did not themselves commit acts of excessive force, judgment in Defendants' favor is warranted.

## IV. CONCLUSION

For the foregoing reasons, the Court enters judgment in favor of Defendants Hassinger and O'Shea. There is no evidence to support a claim of excessive force against either Defendant, as testimony at trial established that neither had an active role in the execution of the search warrant at the heart of this lawsuit. Accordingly, the Court finds that the Defendants motion for judgment as a matter of law under Rule 52 of the Federal Rules of Civil Procedure is **GRANTED**.

An appropriate Order follows.

Dated: October 23, 2017            *s/ Karoline Mehalchick*
                                                      **KAROLINE MEHALCHICK**
                                                      **United States Magistrate Judge**